UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HISCOX DEDICATED CORPORATE
MEMBER, LTD.,

    Plaintiff,                                       Case No. 8:09-cv-2465-T-33AEP

vs.

MATRIX GROUP LIMITED, INC.
and LOUIS ORLOFF,

    Defendants.
_____/

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DESIGNATION AND DEPOSITION OF PERSON WITH THE MOST KNOWLEDGE REGARDING MATRIX GROUP LIMITED, INC.'S DAMAGES

Defendants Matrix Group Limited, Inc. ("Matrix") and Louis Orloff ("Orloff"), through their undersigned attorneys, oppose Plaintiff's Motion to Compel Designation and Deposition of Person With the Most Knowledge Regarding Matrix Group Limited, Inc.'s Damages ("Motion") (Dkt. 207).

### Background

Hiscox's Motion is yet another attempt to unnecessarily burden Matrix and Mr. Orloff and get a fourth bite at the apple in deposing them.[1]  Mr. Orloff testified during his deposition as the corporate representative of Matrix regarding the damages Matrix has suffered as a result of the July 5, 2009 fire, including the damages related to Matrix's business interruption claim.[2]

---

[1] Hiscox conducted a recorded interview of Mr. Orloff for over an hour on July 7, 2009.  Hiscox spent nearly 15 hours conducting an examination under oath of Mr. Orloff and Matrix on September 17 and 30, 2009.  Hiscox deposed Mr. Orloff for seven hours over the course of two days, April 28, 2011 and June 9, 2011.  Hiscox also deposed Mr. Orloff as the corporate representative of Matrix for more than seven hours on June 8 and 9, 2011.

[2] Ex. 1, Matrix Dep., pp. 301-317.  Business interruption insurance is also referred to as business income insurance.

Most strikingly -- in portions of the deposition transcript that Hiscox chose to not attach to its Motion -- Mr. Orloff testified regarding the specific amount of Matrix's business interruption claim and how that amount was calculated:

> Q.  Okay.  Well, how was the business-interruption loss calculated?
>
> A.  Generally, we looked at the loss of income over the first few months following the fire, plus all of the additional expenses we incurred, and determined that it was far in excess of the $600,000; and we then filed this statement, sworn statement, in proof of the loss.

Ex. 1, Matrix Dep., p. 306, lines 8-15.

> Q.  And I understand what you believe you're entitled to.  I'm just asking you to support your claim for damages by telling me how did you come up with a figure that you can't even tell us what the figure is?
> A.  We lost over $1 million due to this fire in lost business revenue.

Ex. 1, Matrix Dep., p. 308, lines 12-17.

> Q.  Are the defendants unable to tell us as we sit here today what the business-interruption loss was, what the calculations were?
>
> …
>
> A.  The defendants Matrix Group and myself submitted a sworn statement on September 4th, 2009, which we stand by in its entirety as being accurate.
>
> BY MR. BEILMAN: Q.   I'll ask, then, sir, what the dollar amount -- to the penny, sir, what was the business-interruption loss that Matrix is claiming?
>
> A.  $600,000 is the amount of our claim --
>
> Q.  How --
>
> A.  -- to the penny.
>
> Q.  How did Matrix calculate that number, sir?
>
> …
>
> A.  Our losses far exceeded the policy limits and we filed a claim for policy limits. In our sworn statement I think it's very clear. The whole loss and damage was above policy limits, September 9th --September 4th, 2009.
>
> BY MR. BEILMAN: Q.   Sir, do you defer to Tutwiler to explain the calculation of the damages?
>
> A.  I think in this case I don't need to. I think that I provided a sworn statement which has never been rejected, to my knowledge, that the whole loss and damage was above policy limits.

Ex.1, Matrix Dep., p. 310, line 13 - p. 311, line 15.

>    Q.    Let's start with the calculations. Sir, how was the business-interruption loss calculated by the defendants?
>
>    …
>
>    A.    We lost more than $1 million in revenue during that period that was covered under the business-interruption section; so therefore, we are entitled to policy limits under the policy.

Ex. 1, Matrix Dep., p. 312, lines 2-9.

Notably, Hiscox's attorney first began asking questions about Matrix's damages with only 12 minutes of the 7 hours allotted for Matrix's deposition remaining.[3] Even though Matrix's attorney allowed the deposition to continue beyond the seven hour limit[4], Hiscox's attorney decided to not show Mr. Orloff the documentation attached to the sworn proof of loss submitted by Matrix to support its $600,000 business interruption claim or to ask questions regarding that documentation.

Furthermore, Hiscox has been aware of the amount of damages that Matrix and Mr. Orloff are claiming in this case for nearly two years - since at least September 2009. Matrix and Mr. Orloff submitted sworn proofs of loss in September 2009 for the losses they sustained, with extensive documentation to support those losses.[5] Hiscox's own expert witness and insurance adjustor do not dispute that if the fire was determined to be a covered loss under the insurance policy, then the damages suffered by Matrix exceeded the business personal property[6] insurance

---

[3]    Ex. 1, Matrix Dep., pp. 300-301.
[4]    Ex. 1, Matrix Dep., pp. 300, 317.
[5]    Attached as Exhibit 2 is the sworn statement in proof of loss submitted to Hiscox for Matrix's $600,000 business interruption claim, with the supporting documentation attached (except for the SBA loan documentation which contains personal financial information and personal identifying information of Mr. Orloff). Attached as Exhibit 3 is the sworn statement in proof of loss submitted to Hiscox for Matrix's $1,412,500 business personal property claim (without the supporting documentation attached). Attached as Exhibits 4 and 5 are the sworn statement in proof of loss and the post-demolition amended sworn statement in proof of loss, respectively, submitted to Hiscox for Mr. Orloff's building coverage claim (without the supporting documentation attached).
[6]    Business personal property insurance is also referred to as inventory and contents insurance.

coverage limit of $1,400,000 and the damages suffered by Mr. Orloff for the loss of his building at 601 Packard Court reached the building insurance coverage limit.[7]

As to the business interruption insurance claim (which is the only aspect of Matrix's damages at issue in Hiscox's Motion), Matrix submitted to Hiscox a sworn proof of loss claiming the coverage limit of $600,000.[8] Hiscox's own expert calculated the business interruption loss sustained by Matrix to be $974,300.89 (more than the $600,000 coverage limit), but then he purportedly applied assumptions and policy sub-limits to determine that only $448,808.16 of the $974,300.89 was an insured loss.[9] Thus, Hiscox's own expert quibbles with only $151,191.84 of Matrix's $600,000 business interruption claim.[10]

## Argument

Matrix has complied with its duties under Rule 30(b)(6). Matrix's corporate representative testified that Matrix's business interruption loss was over $1,000,000, which exceeded the amount of the coverage limit, and Matrix's business interruption claim under the insurance policy was for the coverage limit of $600,000.[11] Matrix's corporate representative made clear that Matrix stood by the sworn statement submitted to Hiscox in September of 2009 as accurately reflecting Matrix's $600,000 business interruption claim.[12] Hiscox is not entitled to compel a further deposition of Matrix simply because Hiscox did not like Matrix's answers to Hiscox's questions:

---

[7] Ex. 6, Morgan Dep., pp. 6, 9; Ex. 7, Retallick Dep., p. 192. Mr. Morgan is Hiscox's hired expert, *see* Ex. 6, Morgan Dep., p. 61, and Mr. Retallick is Hiscox's adjuster, *see* Ex. 7, Retallick Dep., p. 10.
[8] Ex. 2, Sworn Statement in Proof of Loss for Business Interruption Coverage.
[9] Ex. 6, Morgan Dep., pp. 69-70. The purported application of assumptions and policy sub-limits was apparently created by Hiscox's expert while this lawsuit was pending because during the claim investigation Matrix's public adjustor, Michael Platts, was informed that Hiscox's expert agreed that the $600,000 business interruption policy limit was owed if the fire was a covered loss. Ex. 8, Platts Dep., pp. 80-82.
[10] Ex. 6, Morgan Dep., pp. 69-70.
[11] Ex. 1, Matrix Dep., pp. 306, 308, 310-12.
[12] Ex. 1, Matrix Dep., pp. 310-311.

> [T]here is no requirement that the discovered party and its witness anticipate every conceivable question that might be posed by the inquiring party, or that it provide a string of 30(b)(6) witnesses capable of answering every query that creative opposing counsel might think to ask. If the witness is able to address the appropriately defined 30(b)(6) topics knowledgeably, the discovered entity will have met its responsibility under the rule.

*Anthropologie, Inc. v. Forever 21, Inc.*, 2007 WL 6150687, at 1 (S.D.N.Y. Mar. 10, 2007) (determining defendant failed to demonstrate any violation of plaintiff's obligations under Rule 30(b)(6) and did not establish any basis for requiring the designation of additional 30(b)(6) witnesses); *see Costa v. County of Burlington*, 254 F.R.D. 187, 190 (D.N.J. 2008) ("Simply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witness.").

In addition, Hiscox made the calculated decision to not question Matrix's corporate representative regarding the documents attached to the sworn proof of loss supporting Matrix's $600,000 business interruption claim, despite Matrix's corporate representative specifically testifying that those documents reflected Matrix's calculation of the business interruption loss.[13] Matrix's corporate representative was not required to memorize the substantial documentation attached to the proof of loss. "Deponents under Rule 30(b)(6) must be prepared and knowledgeable, but they need not be subjected to a 'memory contest.'" *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 137, 143 (D.D.C. 1998); *see Rahman v. The Smith & Wollensky Restaurant Group, Inc.*, 2009 WL 773344, at * 1 (S.D.N.Y. Mar. 18, 2009) (determining corporate representatives' testimony was sufficient and further discovery was not warranted); *Equal Employment Opportunity Commission v. American International Group, Inc.*, 1994 WL 376052, at * 3 (S.D.N.Y. July 18, 1994) ("Rule 30(b)(6) is not designed to be a memory contest.").

---

[13] Ex. 1, Matrix Dep., p. 307, lines 8-17, p. 308, lines 18-24, p. 310, lines 6-8.

Matrix's corporate representative was knowledgeable regarding Matrix's damages and gave binding answers on behalf of Matrix. *See Zappia Middle East Construction Co., Ltd. v. The Emirate of Abu Dhabi*, 1995 WL 686715, at * 4 (S.D.N.Y. Nov. 17, 1995). Thus, Matrix met its Rule 30(b)(6) obligation. Hiscox's Motion only attached limited portions of the transcript of the corporate representative deposition in a transparent attempt to manufacture some reason to get yet another bite at the apple in deposing Matrix regarding Matrix's business interruption claim. Hiscox did so ***even though*** Hiscox's attorney waited until 12 minutes remained in the deposition to pose any questions regarding Matrix's damages, ***even though*** Matrix's attorney acted in good faith and allowed Hiscox's attorney to exceed the 7 hour limit to complete the deposition, ***even though*** Matrix submitted a sworn proof of loss and documents supporting its $600,000 business interruption claim to Hiscox in September 2009 and Hiscox chose not to ask questions regarding those supporting documents at the deposition, and ***even though*** Hiscox's own expert determined that Matrix's actual business interruption loss exceeded the $600,000 coverage limit by more than $374,000. Hiscox's Motion should be denied.

## Conclusion

WHEREFORE, Matrix Group Limited, Inc. and Louis Orloff respectfully request that the Court deny Plaintiff's Motion to Compel Designation and Deposition of Person With the Most Knowledge Regarding Matrix Group Limited, Inc.'s Damages (Dkt. 207).

Respectfully submitted,

/s  Kelli A. Edson
Paul E. Parrish
Florida Bar No. 373117
paul.parrish@quarles.com
Kelli A. Edson
Florida Bar No. 0179078

        kelli.edson@quarles.com
        Michael V. Leeman
        Florida Bar No. 0084422
        michael.leeman@quarles.com
        Quarles & Brady LLP
        101 East Kennedy Boulevard
        Suite 3400
        Tampa, FL  33602-5195
        813.387.0300
        813.387.1800 Facsimile
        Trial Counsel for Defendants

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 5, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Matthew L. Litsky, Esq. and Vincent P. Beilman, III, Esq., Phelps Dunbar, LLP, Suite 1900, 100 S. Ashley Drive, Tampa, Florida 33602.

        /s  Kelli A. Edson
        Attorney

QB\13781905.1