UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HISCOX DEDICATED CORPORATE
MEMBER, LTD.,

        Plaintiff,

v.                     Case No.  8:09-cv-2465-T-33AEP

MATRIX GROUP LIMITED, INC. and
LOUIS ORLOFF,

        Defendants.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendants Matrix Group Limited, Inc. and Louis Orloff's Motion for Attorneys' Fees (Doc. # 426), which was filed on January 26, 2012. Plaintiff Hiscox Dedicated Corporate Member, Ltd. filed a Response in Opposition to the Motion for Attorneys' Fees (Doc. # 472) on June 5, 2012. For the reasons that follow, the Court grants Defendants' attorneys' fees in the amount of $2,218,671.60.

**I.   Background and Procedural History**

On October 13, 2011, following an eleven-day trial, the jury returned a verdict in favor of Defendants. Specifically, the jury determined that the July 5, 2009, fire at the Matrix building was not intentionally set, that Defendants did not commit fraud and did not intentionally misrepresent or conceal material facts, and that the Matrix building's burglar alarm

was not suspended or impaired. (Doc. # 389).  The jury awarded

Defendants the following damages:

    a.   Damages to the Building: $702,600.00
    b.   Damages to the Inventory and Contents:
         $1,400,000.00
    c.   Damages due to Business Interruption:
         $600,000.00
    d.   Other Damages under the Policy: $12,500.00
    Total Damages: $2,715,100.00

(Doc. # 389).

    Thereafter, Hiscox moved for judgment as a matter of law

pursuant to Rule 50(a) of the Federal Rules of Civil Procedure

(Doc. # 394) and also sought an order of remittitur requesting

that the Court reduce the jury's verdict by $447,330.51, the

amount Hiscox previously paid to Superior Bank in satisfaction

of the mortgage on the Matrix property.  (Doc. # 397).   On

January 12, 2012, this Court denied the Motion for Judgment as

a Matter of Law and granted the Motion for Remittitur. (Doc.

# 417).  Specifically, the Court reduced that portion of the

jury's verdict in which the jury awarded $702,600.00 for

"Damages to the Building" by $447,330.51.   On January 12,

2012, the Court entered its Judgment in favor of Matrix and

Mr. Orloff in the amount of $2,267,769.49. (Doc. # 421).

    On January 25, 2012, Hiscox filed its Emergency Motion to

Stay Proceedings to Enforce Money Judgment Pending Disposition

of Post-Judgment Motions (Doc. # 423).   The Court stayed the

Judgment against Hiscox pending further order and required Hiscox to post a supersedeas bond in the amount of $2,834,711.74. (Doc. # 429).

On January 26, 2012, Matrix and Mr. Orloff filed a Motion to Alter Judgment to include interest, which this Court granted as an unopposed Motion after Hiscox failed to file a response. (Doc. # 437). The Court entered its Amended Judgment in favor of Defendants in the amount of $2,577,691.75 on February 28, 2012. (Doc. # 443).

On February 9, 2012, Hiscox filed its Renewed Motion for Judgment as a Matter of Law and New Trial (Doc. # 436) and on March 26, 2012, Hiscox filed the same Motion, but directed to the Amended Judgment. (Doc. # 452). The Court denied the Motions on April 25, 2012. (Doc. # 458). At this juncture, Defendants seek an award of attorneys' fees.

## II. **Analysis**

Defendants utilized four separate legal teams in this matter. In the Motion, Defendants request attorneys' fees in the amount of $2,817,155.00 (plus any additional attorneys' fees incurred by Defendants after January 13, 2012) multiplied by a contingency risk multiplier of 2.5. Defendants seek this award pursuant to Florida Statute § 627.428, which requires an award of attorneys' fees to a prevailing insured in a coverage

case such as this one.[1]  Plaintiff agrees that Defendants are entitled to an award of attorneys' fees.  However, Plaintiff characterizes Defendants' fee request as excessive and disputes the number of hours requested, the hourly rates of the billing attorneys, paralegals, and other workers, and the applicability of a fee multiplier.

### A.   The Lawfirms and Timekeepers

#### 1.   Merlin Law Group

Defendants retained the Merlin Law Group in August 2009 to represent Mr. Orloff and Matrix employees during the pre-suit investigation. (Doc. # 426-5 at ¶ 3).  Defendants seek to recover $16,305.00 for the work completed by the Merlin Law Group as follows:

| Attorneys | hours | rate | amount |
|---|---|---|---|
| Devaney, Donna | 21.20 | $450 | $9,540.00 |
| Kestenbaum, Mary | 5.70 | $450 | $2,565.00 |
| **Paralegal** | **hours** | **rate** | **amount** |
| Hall, Jacquelynn | 33.60 | $125 | $4,200.00 |

---

[1] Plaintiff submits that Defendants are entitled to attorneys' fees pursuant to Florida Statute § 626.9373, rather than § 627.428, based on Plaintiff's surplus lines insurance status.  Whether the fees are predicated upon Florida Statute § 626.9373 or § 627.428 is a distinction without a difference. These two fee-shifting statutes are applied using the same analytical framework and require an award of fees to the prevailing insured in coverage matters.

| | | TOTAL | $16,305.00 |
|---|---|---|---|

## 2. Holland & Knight

Defendants retained Holland & Knight on an unspecified date and agreed to pay these attorneys on an hourly basis. (Doc. # 426-1 at ¶¶ 4,6). Defendants seek $48,578.50 for Holland & Knight's legal fees as follows:

| Attorneys | hours | rate | amount |
|---|---|---|---|
| Boeke, Noel | .30 | $360 | $108.00 |
| Boeke, Noel | .04 | $420 | $168.00 |
| Dufoe, William | 4.90 | $420 | $2,058.00 |
| Thomas, Natalie | 50.70 | $320 | $16,224.00 |
| Parrish, Paul | 15.10 | $370 | $5,587.00 |
| Parrish, Paul | 62.30 | $390 | $24,297.00 |
| **Paralegal** | **hours** | **rate** | **amount** |
| Daniel, Nancy | .70 | $195 | $136.50 |
| | | **TOTAL** | $48,578.50 |

## 3. Quarles & Brady

In April 2010, one of the Holland & Knight attorneys, Paul Parrish, Esq., left Holland & Knight and became employed at Quarles & Brady LLP. Id. at ¶ 2. Defendants followed Parrish to Quarles and agreed to Quarles representing Defendants on a contingency fee basis. Id. at ¶¶ 5,7. Parrish explains that Quarles generated attorneys' fees in the amount

5

of $2,792,793.50; however, Parrish submits that of this amount, $79,243.00 is not compensable pursuant to the applicable fee-shifting statute because these fees were spent litigating the amount of attorneys fees to be awarded and other non-compensable matters. Id. at ¶¶ 8-10.[2]

The table of fees submitted by Quarles has been replicated below; however, the information submitted to the Court contains multiple, significant mathematical errors. The Court has therefore modified the chart, and the Court has highlighted those portions of the chart that originally contained mathematical errors, as follows:

| Attorneys | hours | rate | amount |
|---|---|---|---|
| Parrish, Paul | 2,012.80 | $495 | $996,336.00 |
| **Parrish, Paul** | **296.20** | **$505** | **$149,581.00** |
| Tretter, Andrew | 10.30 | $415 | $4,274.50 |
| Edson, Kelli | 1,910.70 | $350 | $668,745.00 |
| Brown, Benjamin | 8.50 | $270 | $2,295.00 |
| Fowler, Andrea | 3.40 | $210 | $714.00 |
| Lucente, Cheryl | 3.10 | $270 | $837.00 |
| Wilbert, Johanna | 1.10 | $265 | $291.50 |

---

[2] Under Florida law, attorney's fees incurred in the course of a dispute concerning attorney's fees are only recoverable under fee-shifting statutes when the dispute is over the "entitlement" to attorneys fees, not for litigation pertaining to the "amount" of fees owed. State Farm Fire & Cas. Co. v. Palma, 629 So. 2d 830, 831-32 (Fla. 1993).

| | | | |
|---|---|---|---|
| Smith, Keely | 15.60 | $140 | $2,184.00 |
| Davis, Kelly | 11.30 | $240 | $2,712.00 |
| Raines, Lauren | 42.80 | $310 | $13,268.00 |
| Raines, Lauren | 1.30 | $315 | $409.50 |
| **Saxe, Lindsay** | **47.60** | **$235** | **$11,186.00** |
| **Bender, Marshall** | **75.20** | **$205** | **$15,416.00** |
| Bender, Marshall | 98.40 | $220 | $21,648.00 |
| Bender, Marshall | 2.10 | $230 | $483.00 |
| Leeman, Mike | 119.30 | $205 | $24,456.50 |
| Leeman, Mike | 1,021.80 | $210 | $214,578.00 |
| Leeman, Mike | 75.20 | $225 | $16,920.00 |
| Upshaw-Frazier, Rena | 104.80 | $280 | $29,344.00 |
| Knox, Doug | 456.90 | $360 | $164,484.00 |
| Knox, Doug | 67.60 | $375 | $25,350.00 |
| Hamilton, William | 9.60 | $495 | $4,752.00 |
| **Paralegals** | **hours** | **rate** | **amount** |
| O'Connor, John D. | 1,774.90 | $190 | $337,231.00 |
| **O'Connor, John D.** | **179.20** | **$195** | **$34,944.00** |
| Budzisz, Tina | 39.50 | $200 | $7,900.00 |
| Budzisz, Tina | .50 | $205 | $102.50 |
| Johnson, Dawn | 8.10 | $95 | $769.50 |
| **Legal Specialists** | **hours** | **rate** | **amount** |
| Kemper, Daniel | 115.50 | $205 | $23,677.50 |
| Mical, Kevin | .20 | $200 | $40.00 |
| Marshall, Raechael | 69.50 | $205 | $14,247.50 |
| | | **TOTAL** | **$2,789,177.00** |

7

As Defendants admit that $79,243.00 of this amount is not compensable, the Court surmises that Defendants actually seek $2,709,934.00 for the work completed by Quarles & Brady.

### 4. Brannock & Humphries

Defendants retained the Brannock firm to represent them in September 2011, for the purpose of preserving the trial record for appeal. (Doc. # 426-6 at ¶ 4). Defendants seek $36,487.00 in legal fees for the Brannock firm as follows:

| Attorneys | hours | rate | amount |
|---|---|---|---|
| Brannock, Steven | 16.50 | $450 | $7,425.00 |
| Humphries, Celene | 35.30 | $425 | $15,002.50 |
| Carlin, Tracy | 4.70 | $425 | $1,997.50 |
| Luka, Maegen | 43.80 | $250 | $10,950.00 |
| **Paralegal** | **hours** | **rate** | **amount** |
| DePerto, Sarah | 8.80 | $125 | $1,100.00 |
| **Accountant** | **hours** | **rate** | **amount** |
| Ehrhard, Shannon | .20 | $60 | $12.00 |
| | | **TOTAL** | $36,487.00 |

Using the information submitted by Defendants, the Court determines that Defendants are actually requesting $2,811,304.50 in attorneys fees.[3]

---

[3] (Merlin Law Group $16,305.00 + Holland & Knight $48,578.50 + Quarles & Brady $2,709,934.00 + Brannock & Humphries $36,487.00 = $2,811,304.50).

**B.   Legal Standard**

In this diversity case, the issue of attorneys' fees is decided under Florida law. See Davis v. Nat'l Med. Enters., 253 F.3d 1314, 1319, n.6 (11th Cir. 2001). Florida Courts have adopted the federal lodestar approach for analyzing attorneys' fees awarded pursuant to Florida fee-shifting statutes. See Fla. Patient's Comp. Fund v. Rowe, 472 So. 2d 1145, 1150 (Fla. 1985)("We find the federal lodestar approach . . . provides a suitable foundation for an objective structure."). The lodestar is a product of the hours reasonably expended on a case multiplied by a reasonable hourly rate. The Court will consider the following factors, enumerated in Rowe and set forth in The Florida Bar Code of Professional Responsibility, when determining the lodestar:

> (1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal services properly.
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
> (3) The fee customarily charged in the locality for similar legal services.
> (4) The amount involved and the results obtained.
> (5) The time limitations imposed by the client or by the circumstances.
> (6) The nature and length of the professional relationship with the client.
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
> (8) Whether the fee is fixed or contingent.

Id.[4]

In addition, as a contingency fee agreement governs the relationship between the Defendants and Quarles & Brady, the court must also determine whether to enhance the lodestar with a multiplier pursuant to Standard Guaranty Ins. Co. v. Quanstrom, 555 So. 2d 828, 831 (Fla. 1990). In conducting its analysis, the Court is mindful that it is "not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999).

C.    **Number of Hours Expended**

Plaintiff submitted a detailed response in opposition to the Motion (Doc. # 472) and also filed the 51-page affidavit of Pedro Bajo, Esq. (Doc. # 472-4). Therein, Plaintiff argues that "Defendants' claimed hours must be reduced because they are unreasonable and excessive." (Doc. # 472 at 2). This Court agrees and determines that it is appropriate to reduce the amount of fees sought by Defendants by 20%. See Ruderman

---

[4] The Court has taken into consideration each of the eight Rowe factors, even if the Court has not explicitly stated the manner in which such factors have affected its analysis.

10

v. Wash. Nat'l Ins. Corp., No. 11-11416, 2012 U.S. App. LEXIS 6339, at *2-3 (11th Cir. Mar. 29, 2012)(reducing fee application by 20% and holding, "When fee documentation is voluminous, an hour-by-hour review is 'impractical and a waste of judicial resources' and an across-the-board percentage cut is permitted.")(quoting Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994)). A 20% across-the-board fee reduction is justified in this case for the following reasons.

### 1. Block Billing and Imprecise Billing

"One basis for reducing the requested number of hours is the use of block billing, which refers to the practice of including multiple distinct tasks within the same time entry." Bujanowski v. Kocontes, No. 8:08-cv-390-T-33EAJ, 2009 WL 1564263, at *2 (M.D. Fla. Feb. 2, 2009). "Block billing occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." Ceres Envtl. Servs. v. Colonel McCrary Trucking, LLC, No. 11-12787, 2012 U.S. App. LEXIS 8271, at *11 (11th Cir. Apr. 25, 2012). The Ceres court noted that block billing results in "imprecision in an attorney's records . . . a problem for which the opponent should not be penalized" and approved the use of across-the-board reductions to offset the ill effects of block billing. Id. (internal

11

citations omitted).  As correctly noted by Bajo, "Defense counsel's timesheets are replete with block billed entries such that not a single page exists without a block billed entry among the hundreds of pages of timesheets and more than a thousand block billed entries have been presented." (Doc. # 472-4 at ¶ 47).  The following are some examples of block billing found in defense counsels' timesheets:

8/4/2011, Paul Parrish, 7.0 hours

> Pretrial preparation including review of depositions, documents, expert reports and demonstrative exhibits; preparation of witness outlines; research into evidentiary issues.

8/5/2011, Kelli Edson, 7.2 hours

> Prepare opposition to Hiscox's Motion for Spoliation Sanctions; telephone conference with David Frank of Team Lightning; analyze strategy for opposition to Hiscox's Motion for Spoliation Sanctions; supervise compilation of examples of emails to be attached to opposition; prepare correspondence to client regarding Hiscox's demonstrative exhibits; prepare correspondence to Hiscox's counsel, V. Beilman, regarding Hiscox's failure to produce demonstrative exhibits for review; analyze witness examinations to be prepared for trial; analyze trial strategy and structure for opening statement based on results of mock trial analysis; consider strategy for structure of opposition to Hiscox's motion to strike Carl Crawford; telephone conference with client.

(Doc. # 426-3 at 18-19).

The presence of block billing makes it impossible for the Court to determine how much time was actually spent on any

12

particular task.   In addition, the descriptions used by Defendants' attorneys are vague and oftentimes fail to describe the actual task performed.   More troubling is the fact that Parrish's affidavit states that $79,243.00 is not compensable, but Parrish failed to identify and remove from the time sheets submitted to the Court entries associated with that non-compensable time.   Furthermore, Parrish's affidavit contained mathematical errors. (Doc. # 462-1 at 4-5).   In addition, the amount Defendants are seeking does not match the amount Defendants' fee expert, Timothy Andreu, Esq., states should be awarded, which is $2,814,925.50.[5]

In addition to the copious block billed entries and defense counsels' failure to omit from the fee ledgers time that Defendants admit is non-compensable, the Court also determines that many of the time entries are too vague and generic to be compensable.   As an example, Parrish billed 7.0 hours on January 26, 2011, for the following, "Deposition

---

[5] Defendants submitted the declaration of Timothy Andreu, Esq. as to the reasonableness of Defendants' attorneys' fees. (Doc. # 426-7).   Without providing any substantive analysis, Andreu simply submits: "In my opinion, the amount of $2,814,925.50 is a reasonable amount of attorneys' fees for the work performed by counsel for defendants." Id. at ¶ 6.   It appears that Andreau recommends that this Court award fees that both sides agree are not proper under the applicable fee-shifting statute.

preparation; strategy; review file; meeting with expert; meeting with client." (Doc. # 426-2 at 12).  As asserted by Bajo, "even if [Parrish's] entries had been broken down into task billed entries, it would still be impossible to determine the reasonableness of the time spent on generically described tasks." (Doc. # 472-4 at ¶ 57).

In addition, Parrish used the following entry in 33 different and nearly consecutive entries: "Trial preparation including review of depositions, documents, expert reports and demonstrative exhibits; preparation of witness outlines, research into evidentiary issues." During trial, he added the words "attend trial" but otherwise left the description the same.

Furthermore, it appears that attorneys completing the same tasks billed different amounts of time for such tasks. By way of example, on January 20, 2010, Attorney Parrish and Attorney Thomas met Hiscox's counsel at the subject warehouse. Thomas billed 1.9 hours for attending the meeting and performing a number of other tasks while Parrish billed 3.1 hours solely for attending the meeting with Hiscox's counsel:

1/20/2010, Paul Parrish, 3.1 hours

Meet with opposing attorney

(Doc. # 426-1 at 25).

14

1/20/2010, Natalie Thomas, 1.9 hours

> Meeting with partner and opposing counsel at warehouse regarding case, background and allegations; email correspondence with client and private investigator regarding scheduling meeting.

(Doc. # 426-1 at 25).

The many instances of block billing and generic and imprecise billing justify the Court's decision to decrease Defendants' requested attorneys' fees by 20% across the board.

## 2. Clerical Work

Quarles billed $37,965.00 for work performed by its three legal specialists:

| | | | |
|---|---|---|---|
| Kemper, Daniel | 115.50 | $205 | $23,677.50 |
| Mical, Kevin | .20 | $200 | $40.00 |
| Marshall, Raechael | 69.50 | $205 | $14,247.50 |
| | | **TOTAL** | $37,965.00 |

These "specialists" are neither attorneys nor are they law clerks or paralegals. Clerical and administrative work is a part of a lawfirm's overhead and should not be reflected in a fee ledger. Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 278 F. Supp. 2d 1301, 1321 (M.D. Fla. 2003). The Court accordingly disallows $37,965.00.

In addition, the Court has identified many occasions in

15

which Defendants' attorneys and paralegals billed for purely clerical tasks. As an example, on February 4, 2011, paralegal John O'Connor billed 7.8 hours for the following tasks: **Phone calls and e-mails with vendor regarding the continued copying and bates labeling of documents picked up from R. Symanski**; continue review of photos of fire; preparation of documents to be used during the S. Retallick deposition; **update and calendar items.** (Doc. # 426-2 at 16)(emphasis added). O'Connor also billed 8.1 hours on August 4, 2011, as follows: Edit trial list; prepare trial exhibits for review by opposing counsel; observe opposition counsel's review of trial documents; **organize war room and files.** (Doc. # 426-3 at 18)(emphasis added).

Likewise, attorney Michael Leeman, Esq. billed 11 hours on September 22, 2011 as follows: Trial preparation; review and revise motion for use of Diane Davis deposition; research burden of proof re availability of witnesses; critique trial-run of opening statement; meet with Geno Knowles regarding model issues and fixes; **move various exhibits to federal courthouse.** (Doc. # 426-3 at 46)(emphasis added).

Although the Court cannot ascertain the number of hours O'Connor and Leeman spent conducting the highlighted clerical

16

tasks due to the presence of block billing, the Court
determines that these selected examples support the court's
decision to employ an across-the-board reduction of Defense
counsels' hours.

### 3.   <u>Discrete Unsuccessful Litigation Strategies</u>

Although Defendants ultimately prevailed in this action,
the Court's decision to reduce their attorneys' fees by 20% is
justified due to several fruitless litigation strategies
Defendants employed. <u>See</u> <u>Duckworth v. Whisenant</u>, 97 F.3d 1393,
1397 (11th Cir. 1996)(deducting hours spent pursuing
unsuccessful First Amendment and malicious prosecution
claims).

First, Defendants opposed Plaintiff's Motion for
Remittitur, a motion granted by the Court.  Second, Defendants
unsuccessfully litigated the issue of the admission of
polygraph evidence. Third, Defendants unsuccessfully litigated
the issue of child witnesses and the record reflects that none
of the children at issue were presented as witnesses in this
case.  Fourth, Defendants filed a motion for summary judgment
in the face of obvious factual disputes.  More troubling is
the fact that Defendants' time records include 94 time entries
by seven different timekeepers referencing the motion for
summary judgment.  Although the presence of block billing

precludes this Court from decisively excising the time Defendants spent preparing the motion for summary judgment, the excessive billing associated with the motion for summary judgment, as well as the discrete unsuccessful litigation strategies outlined above, warrants a reduction of Defendants' requested fees by 20%.

### 4.   Video Surveillance

Defendants' fee ledger reflects over 100 entries totaling 444.95 hours for activity related to viewing the video surveillance of the subject property.   Because Defendants' counsel block billed their time, it is not possible for the Court to extract redundant entries from the fee ledger. However, regardless of the presence of block billing, this Court can easily ascertain that excessive hours were unreasonably expended as eight different timekeepers, attorneys and paralegals alike, viewed the video surveillance multiple times.

### D.   Hourly Rates

This Court determines a reasonable hourly rate based upon the prevailing market rate in the city the case was filed for similar services by similarly trained and experienced attorneys in the relevant legal community. Duckworth, 97 F.3d at 1396.   As fee movants, Defendants bear the burden of

establishing entitlement to the rates claimed, and they have not done so.  Defendants seek attorneys fees for 35 different timekeepers, of whom 25 are attorneys.  Many of the attorneys are requesting varying hourly rates such that there are 26 attorney rates at issue here, ranging from $140 to $505 per hour.  As for the six paralegals, their requested hourly rates span between $95 and $205.

As it is impractical to perform an hour-by-hour analysis of Defendants' hours expended, it is also impractical to perform a timekeeper-by-timekeeper analysis as to each timekeeper's reasonable hourly rate.  This is due, in large part, to the fact that Defendants have not provided any relevant information about the experience and background of a majority of Defendants' timekeepers.  Rather than reducing individual hourly rates, the Court determines that it is appropriate to reduce the fee application by 20% across the board.

### E.    **Fee Multiplier**

The Florida Supreme Court has set forth three distinct categories of cases in which the Court may consider applying a contingency fee multiplier.  <u>Bell v. U.S.B. Acquisition Co.</u>, 734 So. 2d 403 (Fla. 1999).  In determining whether to apply a contingency fee multiplier, the Court must first determine

19

which category this case falls into.   In Bell, the Court explained: "[W]e find it appropriate to place attorney's fees cases into the following three categories: (1) public policy enforcement cases; (2) tort and contract claims; and (3) family law, eminent domain, and estate and trust matters.   The categories are not intended to be all-inclusive." 734 So. 2d at 408.

For the first type of cases, public policy enforcement cases, the Bell Court "adopted the federal approach of Blanchard that utilizes multiple factors to arrive at reasonable attorney's fees.[6]   In these cases, the existence of a contingency fee arrangement is but one factor to consider in determining reasonable attorney's fee, and the trial court is not limited in its award by the fee arrangement between the party and his or her attorney." Id.

---

[6] In Blanchard v. Bergeron, 489 U.S. 87, 91 n. 5 (1989), the Court set forth the following factors for consideration: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

As for the second category of cases, tort and contract cases, the Court explained:

> [T]he trial court should consider the following factors in determining whether a multiplier is necessary: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of non-payment in any other way; and (3) whether any of the factors set forth in <u>Rowe</u> are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client. Evidence of these factors must be presented to justify the utilization of a multiplier . . . If the trial court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of success was approximately even at the outset, the trial court may apply a multiplier of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset, it may apply a multiplier of 2.0 to 2.5.

<u>Id.</u> at 408.

In the third category of cases, encompassing family and trusts and estates law, the court determined that a contingency fee multiplier is generally not appropriate. <u>Bell</u>, 734 So.2d at 408, n. 7.

Here, the parties dispute whether this case falls into the public policy enforcement category or tort and contract category. Defendants assert that this case should be evaluated as a public policy enforcement case rather than a contract case. (Doc. # 426 at 15). Defendants filed the

21

affidavit of Jacob J. Munch, Esq. (Doc. # 426-8) in which Munch states his opinion that this case should be placed in the public policy enforcement category.  Id. at ¶ 7.  Munch suggests that this case warrants a multiplier of 2 to 2.5, and states, "it looked like success would have been unlikely at the outset of the case."  Id. at ¶ 10.

After considering the case law, the Court determines that this case falls into the second category, tort and contract. The cases that have considered whether to apply a fee multiplier to attorney's fees awarded pursuant to Florida's insurance fee-shifting statutes have used the "tort and contract" analytical framework.  For instance, in Holiday v. Nationwide Mutual Fire Insurance, 864 So. 2d 1215 (Fla. 5th DCA 2004), Pamela Holiday and Leonard Shealey insured their home against the risk of fire with a Nationwide insurance policy.  Id. at 1271.   "After the couple ended their relationship, a suspicious conflagration occurred in the residence . . . [w]hen arson was determined to be the cause of the fire, and there was some indication that Mr. Shealey might have been the culprit, Nationwide declined coverage."  Id.  Ms. Holiday and Mr. Shealey brought suit and succeeded in recovering a verdict for the full amount they sought after a jury trial.  Id.

22

Thereafter, Ms. Holiday and Mr. Shealey sought attorney's fees pursuant to Florida Statute § 627.428 and also sought a contingency fee risk multiplier. Id. at 1218. Relying on Quanstrom, the court determined that the case fell under the "tort and contract" category and awarded a fee multiplier of 2.0. Id. at 1218-19.

The Holiday case does not stand alone in categorizing cases such as the present case as "tort and contract" cases. See e.g. Jablonski v. St. Paul Fire and Marine Ins., No. 2:07-cv-386, 2010 U.S. Dist. LEXIS 34176 (M.D. Fla. Apr. 7, 2010); U.S. Sec. Ins. Co. v. Lapour, 617 So. 2d 347 (Fla. 3d DCA 1993); Allstate Ins. Co. v. Regar, 942 So. 2d 969 (Fla. 2d DCA 2006); Rynd v. Nationwide Mut. Fire Ins. Co., No. 8:09-cv-15556-T-27TGW, 2012 U.S. Dist. LEXIS 37732 (M.D. Fla. Mar. 15, 2012); Gimenez v. Am. Sec. Ins. Co., No. 8:08-cv-2495-T-24TGW, 2009 WL 2256088 (M.D. Fla. July 28, 2009).

Accordingly, in determining whether to award a fee multiplier, the Court will consider (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of non-payment in any other way; and (3) whether any of the factors set forth in Rowe are applicable, especially the amount involved, the results obtained, and the

23

type of fee arrangement between the attorney and his client. Bell, 734 So. 2d at 408.

The Court determines that a contingency fee multiplier is not warranted here. There is a "strong presumption" that the lodestar is sufficient to attract competent counsel, and the party seeking the multiplier has the burden of identifying a factor that the lodestar does not take into account adequately and proving with specificity that the enhancement is warranted. Perdue v. Kenny, 130 S. Ct. 1662, 1669 (2010).

Here, there is no evidence that a multiplier was needed to attract competent counsel. To the contrary, Defendants originally secured representation with two firms on an hourly basis, the Merlin Law Group and Holland & Knight. Notably absent from the file is any statement from Mr. Orloff that he had any trouble finding an attorney to represent him. Counsel's unsupported assertion that a multiplier was needed to garner representation simply does not carry the day. See Gimenez, 2009 WL 2256088, at *3 (placing first party insurance dispute into "tort and contract" category for multiplier assessment and denying multiplier based upon lack of evidence); Progressive Express Ins. Co. v. Shultz, 948 So. 2d 1027 (Fla. 5th DCA 2007)(use of a multiplier was unwarranted when there was no evidence that insured had any difficulty

24

obtaining counsel); <u>Eickhard v. Hintze</u>, 969 So. 2d 1219, 1223 (Fla. 1st DCA 2007)(reversing the award of a contingency risk multiplier when no evidence, aside from plaintiff's counsel's say-so, was presented to show that the market conditions required an enhancement to enable plaintiff to obtain competent counsel).

In addition, the Court determines that defense counsel were able to mitigate the risk of non-payment by charging hefty hourly rates in the presence of a mandatory, statutory fee award to prevailing parties in insurance litigation. Further, the Court cannot ignore the fact that the fees here exceed the agreed upon contingency fee amount. Here, defense counsel obtained a judgment totaling $2,577,691.75. (Doc. # 443). Pursuant to the fee agreement (Doc. # 426-1 at 9), defense counsel are entitled to a fee of $815,538.35. The fee defense counsel requests is more than three times that amount. Thus, defense counsel have adequately mitigated their risk of non-payment.

The Court recognizes that the results obtained for the client were excellent and that Defendants recovered all that they demanded. However, this factor does not warrant the use of a multiplier as the Court determines that attorneys of ordinary skill could have obtained the same results for the

client and could have done so expending substantially less resources.  Thus, considering the circumstances of this case, including the fact that Mr. Orloff was never charged with a crime, the Court determines that the probability of success was great from the outset, and the award of a multiplier is not warranted.

In addition, the Court rejects Defendants' arguments that Plaintiff's "take no prisoners" litigation strategy, including filing successive motions and multitudinous discovery requests, warrants the award of a multiplier. See Pa. v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 730 (1987) ("The matter may have been difficult, wearing, and time consuming, but that kind of effort has been recognized in the lodestar award.").

In sum, the Court finds that the amount of $2,218,671.60 fully satisfies the fee-shifting statute's purpose of "discourag[ing the] contesting of valid claims of insureds." Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., 254 F.3d 987, 1010 (11th Cir. 2001).  The Court arrives at this figure as follows:  Merlin Law Group $16,305.00 + Holland & Knight $48,578.50 + Quarles & Brady $2,709,934.00 (comprised of $2,789,177.00 - $79,243.00) + Brannock & Humphries $36,487.00 = $2,811,304.50.  The Court reduces the  figure of

26

$2,811,304.50 by $37,965.00 for the work of "legal specialists" to yield $2,773,339.50.   The Court reduces $2,773,339.50 by 20% for a grand total of $2,218,671.60.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

The Court **GRANTS** Defendants Matrix Group Limited, Inc. and Louis Orloff's Motion for Attorneys' Fees (Doc. # 426) by awarding $2,218,671.60 in attorneys' fees.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 15th day of June 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies: All Counsel of Record

27